NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MATTHEW T. SHAW, *Petitioner/Appellant*,

*v.*

MERCEDES M. BERGERON, *Respondent/Appellee*.

No. 1 CA-CV 21-0094 FC
FILED 10-26-2021

Appeal from the Superior Court in Maricopa County
No.  FC 2014-094188
The Honorable Roderick J. Coffey, Judge

**AFFIRMED**

APPEARANCES

Thomas M. Shaw, Mesa
*Counsel for Petitioner/Appellant*

Mercedes M. Bergeron, Gilbert
*Respondent/Appellee*

_____

**MEMORANDUM DECISION**

_____

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

_____

**C A M P B E L L**, Judge:

¶1        Matthew Shaw (Father) challenges various post-decree rulings of the family court arising from the parties' cross-petitions for modification. Because the court did not abuse its discretion or err as a matter of law in its rulings, we affirm the court's orders.

## BACKGROUND

¶2        Father and Mercedes Bergeron (Mother) have two sons: Andrew and Brett.[2] Under the decree of dissolution (Decree), Andrew and Brett were to go to school near Father's home in Mesa, unless he moved. In 2019, Father moved about 15 miles south, and the parties were unable to agree on new schools for the boys. After an unsuccessful mediation, Father and Mother filed cross-petitions for modification.

¶3        After an evidentiary hearing in late July 2020, the family court modified legal decision-making, parenting time, and child support. After clarifying its parenting-time orders, the court entered judgment on November 2, 2020, awarding Father $3,000 in attorney's fees. The court subsequently amended its child support orders and summarily denied Father permission to file a new petition. Father timely appealed from the November 2nd judgment, the amended child support orders, and the order denying him permission to refile.

_____

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]        We use pseudonyms to protect the identities of the parents' minor children.

## DISCUSSION

¶4        Father contends the family court erred in (1) modifying legal decision-making and parenting time, (2) calculating child support, (3) clarifying its parenting-time orders, (4) limiting its award of attorney's fees, and (5) denying him permission to refile.

¶5        We review the family court's rulings on legal decision-making, parenting time, child support, and attorney's fees for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018); *Candia v. Soza*, 251 Ariz. 321, 324, ¶ 7 (App. 2021); *Quijada v. Quijada*, 246 Ariz. 217, 221–22, ¶ 13 (App. 2019). An abuse of discretion occurs when the court commits an error of law in drawing a discretionary conclusion or when no competent evidence supports the court's decision. *Engstrom*, 243 Ariz. at 471, ¶ 4. We view the record in the light most favorable to sustaining the court's rulings, which we will affirm "if there is any reasonable supporting evidence." *Garlan v. Garlan*, 249 Ariz. 278, 280–81, ¶ 4 (App. 2020). We review the interpretation and application of statutes and court rules de novo, however. *State v. Godoy*, 244 Ariz. 327, 328, ¶ 7 (App. 2017).

## I.        Modification of Legal Decision-Making and Parenting Time

¶6        In the Decree, the family court awarded the parents joint legal decision-making and nearly equal parenting time, assigning most of the weekdays to Father and most of the weekends to Mother. In the post-Decree proceedings leading up to this appeal, the court modified decision-making by giving Mother final authority should the parents be unable to reach an agreement but maintained joint legal decision-making. The court also switched to a 5-2-2-5 schedule, which gave the parents equal parenting time and an equal share of weekdays and weekends.

¶7        Father first argues the family court erred by awarding Mother "unlimited" final decision-making authority in violation of A.R.S. § 25-403.01.[3] Under Section 25-403.01(A), the family court may award sole or joint legal decision-making. Section 25-403.01(B) specifies the factors the court must consider "[i]n determining *the level of decision-making* that is in the child's best interests." (emphasis added).

¶8        Father argues the reference to "level of decision-making" limits an award of final decision-making authority to "a specific purpose"

---

[3]        We note that Father had sought either sole or final decision-making "on all issues of schooling, physical and mental health issue regarding the children."

and "a specific duration." Under a plain reading of the statute, however, the phrase, "level of decision making," is a reference to the two options for legal decision-making given in A.R.S. § 25-403.01(A). Father cites no legal authority in support of a more limited application of the family court's discretion regarding legal decision-making orders. Moreover, Father's argument is inconsistent with *Nicaise v. Sundaram*, where our supreme court upheld orders granting final decision-making authority to one parent on medical, dental, and mental health issues. 245 Ariz. 566, 567, 569, ¶¶ 3, 17 (2019). Calling these "tie-breaking" arrangements "common and commendable," the court did not impose any limit on their duration or scope. *Id.* at 568–69, ¶¶ 13–14.

¶9        Father also contends the family court's findings were inadequate to justify the modification.[4] In order to modify legal decision-making or parenting time, the family court must determine whether a modification is in the child's best interests. *Pridgeon v. Superior Ct.*, 134 Ariz. 177, 179 (1982). The court must consider "all factors that are relevant to the child's physical and emotional well-being, including" 11 statutorily defined best interest factors.    A.R.S. § 25-403(A). If legal decision-making or parenting time are contested issues, the court must "make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B). The court has broad discretion to determine if a change in circumstances justifies modification and to decide what orders are in a child's best interests. *Pridgeon*, 134 Ariz. at 179; *Ward v. Ward*, 88 Ariz. 130, 135 (1960).

¶10        In this case, the family court found modification to be in the children's best interests because (1) Mother and Father could not agree on schools, (2) Brett had severe behavioral problems, (3) Father had been uncooperative in getting Brett professional help for those problems, (4) Mother's preferred schools were higher ranking than Father's and less likely to aggravate Brett's behavioral problems, (5) giving Mother more weekdays would permit her to get Brett assessed and treated, and (6) the children would benefit from a more consistent schedule. The court made

---

[4]        The family court may only modify legal decision-making or parenting-time if it makes the threshold determination that "there has been a change of circumstances materially affecting the welfare of the child." *Black v. Black*, 114 Ariz. 282, 283 (1977). By virtue of petitioning to modify legal decision-making and parenting time, Father is judicially estopped from challenging the family court's finding that a change of circumstances warranted modification. *See State v. Towery*, 186 Ariz. 168, 182 (1996).

findings on each of the 11 factors listed in A.R.S. § 25-403(A) and the four factors listed in A.R.S. § 25-403.01(B). These findings support the court's decision to grant Mother final decision-making authority and to adopt a simpler schedule that gave her more weekday parenting time.[5]

**¶11** Father also challenges the sufficiency of the evidence supporting a host of the family court's findings. The record—in particular Mother's testimony, the children's school records, and school rankings from the Arizona Department of Education—reasonably supports all but one of the challenged findings. Father cites contrary evidence, including his own testimony, but we will not reweigh conflicting evidence or second-guess the court's credibility determinations.[6] *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). The lone exception is the court's finding that Father criticized Mother for refusing to let Brett go to Cub Scouts after he got in trouble at school. Although we find no support in the record for that finding, on the record presented, any such error on the point is harmless. *See generally Creach v. Angulo*, 189 Ariz. 212, 214–15 (1997) (error reversible only if prejudicial). In sum, the court did not reversibly err in modifying legal decision-making or parenting-time.

## II. Calculation of Child Support

**¶12** Father next contends the family court erred in calculating child support by failing to attribute the difference between Mother's actual rent and fair market rent as gross income. Mother paid $800 a month to rent a house that her mother (Grandmother) purchased about 14 months before the trial. Mother made about $15,000 in improvements to the home and paid the homeowners' association fees, property taxes, and insurance, which

---

[5] Father also faults the family court for failing to make specific findings as to Andrew to justify modification "for him." Contrary to Father's assertion, however, the court did make findings as to Andrew, considering his interests separately and in conjunction with his brother's where appropriate.

[6] Most notably, Father contends that Mother's counseling records, which the family court admitted as an exhibit after trial, undermine the court's finding that Mother "appear[ed] to be in adequate mental . . . health." Father presented no evidence on the counseling records at trial, however. Without expert testimony explaining how the information contained in the counseling records bears on Mother's fitness as a parent, the counseling records do not undermine the court's mental-health finding. *See* Ariz. R. Evid. 701 and 702.

totaled about $203 a month. Father's expert estimated that the home's fair market rental value was $1,778 a month; Grandmother testified that it was between $1,300 and $1,400. The court declined to attribute income to Mother based on her reduced rent, finding no "valid basis for doing so."

¶13 Arizona's Child Support Guidelines define gross income broadly to include "income from any source," including "recurring gifts." A.R.S. § 25-320 app. § 5(A). The family court may treat "the free use of a home" as income from recurring gifts if the benefit is "substantial" as well as "regular and continuous." *Cummings v. Cummings*, 182 Ariz. 383, 384–85 (App. 1994) (affirming attribution of homeowners' mortgage payments as income for mother living in house rent-free).

¶14 Here, there was no evidence Mother was receiving a net benefit, much less a substantial one. Her monthly housing costs averaged $800 in rent, about $1,070 in improvements (prorating the $15,000 in improvements over the course of her tenancy), and $203 in fees, taxes, and insurance. In total she paid about $2,073 a month, which exceeds Father's estimate of the fair market rent. Thus, the family court did not abuse its discretion in declining to attribute income to Mother for her alleged reduced rent.

## III. Clarification of Parenting-Time Orders

¶15 In modifying parenting time to follow a 5-2-2-5 schedule, the family court originally ordered that parenting "start times" were to be "at 6:00 p.m." Father moved for clarification about when exchanges were to take place. Before entering the judgment that awarded Father attorney's fees and finalized the modification, the court issued an unsigned minute entry, stating that it "intended for exchanges to occur after school when school is in session or at 3:00 p.m. rather than 6:00 p.m. when school is not in session."

¶16 Father argues the court violated Rule 84(d) of the Rules of Family Law Procedure (Rules) by changing the exchange time from 6 p.m. to 3 p.m. In relevant part, Rule 84(d) provides, "[o]n a motion for clarification, the court may not open the judgment." Under the Rules, however, a "judgment" means "a decree or an order from which an appeal lies." Ariz. R. Fam. Law P. 78(a)(1). And generally, an appeal may only be taken from a post-decree order once the family court has "fully resolved all issues raised in a post-decree motion or petition." *Yee v. Yee*, 251 Ariz. 71, 76, ¶ 14 (App. 2021); *see also* A.R.S. § 12-2101(A)(2) (jurisdiction for appeals from "any special order made after final judgment"). Thus, a post-decree

order is not a "judgment" and remains modifiable until the family court fully resolves all issues contained in the relevant petition.

**¶17** The parenting-time order here was not an appealable judgment when the family court issued its minute entry clarification, as the court had not yet finally resolved the parents' petitions. *See Natale v. Natale*, 234 Ariz. 507, 510–11, ¶¶ 11–12 (App. 2014) (order not appealable until court resolved request for attorneys' fees). Thus, the court did not violate Rule 84(d) by modifying that order.

## IV.    Family Court's Award of Attorney's Fees

**¶18** Father next contends the family court abused its discretion by limiting its award of attorney's fees to him.[7] The family court has discretion to award attorney's fees and costs after considering the parents' financial resources and the reasonableness of their positions throughout the proceedings. A.R.S. § 25-324(A).

**¶19** The family court limited its award of attorney's fees to Father after finding Father and Mother had similar financial resources and had both taken unreasonable positions in the proceedings. The court found Father had acted unreasonably by insisting the court wait to rule until it had received and considered Mother's counseling records. It found Father's insistence unreasonable because (1) "[t]here was no factual basis to believe" Mother had "any significant mental health issues," (2) Father "should have been more proactive" in obtaining the records before trial, and (3) the resulting delay had prevented the court from ruling before the new school year began.

**¶20** Our review of the record discloses ample support for the family court's findings. At the evidentiary hearing, Father did not present evidence about or cross-examine Mother about her mental health. Father did not seek formal discovery of Mother's counseling records, but instead, two weeks before trial, moved for a mental health evaluation. And contrary to Father's assertion, he did insist the court delay its ruling, even though the start of the school year was imminent. Although this delay was exacerbated by an error in transmission outside of Father's control, the

---

[7] Father also argues the family court abused its discretion by considering facts not in evidence. Because he fails to develop and support this argument with citations to the record and legal authority, he has waived it. *See* ARCAP 13(a)(7)(A); *see also Boswell v. Fintelmann*, 242 Ariz. 52, 54, ¶ 7 n.3 (App. 2017).

court did not abuse its discretion by holding Father responsible for his role in unnecessarily delaying its disposition.

## V.  Denial of Permission to File Early Petition for Modification

**¶21**      Father argues the family court abused its discretion by denying him permission to file another petition for modification. About two months after the court fully resolved the parents' petitions, Father moved for permission to file a new petition for modification. He claimed that Mother, a certified nursing assistant (CNA), had endangered the children by giving them flu vaccinations at home. He alleged that Mother had "ma[de] medical decisions . . . without a supervising physician," violated Arizona laws and regulations governing CNAs, and rendered the efficacy of the children's vaccines "questionable" by foregoing necessary cold-storage procedures. Father also alleged that Mother violated the court's legal decision-making orders by failing to consult with him beforehand. The court summarily denied his motion.

**¶22**      Under A.R.S. § 25-411(A), a parent must wait one year before petitioning to modify decision-making or parenting-time orders, unless the family court permits otherwise on the basis that the child's environment may "seriously endanger" the child's health. A.R.S. § 25-411(A). We review the denial of permission to file a new petition for modification for an abuse of discretion. *Murray v. Murray*, 239 Ariz. 174, 176, ¶ 5 (App. 2016).

**¶23**      Here, Father does not allege any serious harm to the children actually occurred or could have occurred. *Cf. State ex rel. Hollingsworth v. Ferrill*, 1 CA-CV 19-0373 FC, 2020 WL 2394861, at *2, ¶ 10 (Ariz. App. May 12, 2020) (mem. decision) (child having self-harm thoughts and "afraid about what's going to happen at Father['s] home"). Mother may have violated nursing laws and medical norms, but Father has not shown how this seriously endangered the children. At most, he claims the children's protection against the flu may have been "negate[d] or seriously diminish[ed]." But in this context, speculation about reduced protection against an illness the children may or may not contract does not amount to serious endangerment. Because Father has shown no abuse of discretion, we affirm the family court's denial of permission to file an early petition.[8]

---

[8]      Additionally, the issue appears to be moot. A parent may petition for modification after only six months "based on the failure of the other parent to comply with the provisions of the order" if the order provides for

## VI.     Request for Attorney's Fees on Appeal

**¶24**          Father requests attorney's fees pursuant to A.R.S. § 25-324. We have discretion to award either parent their reasonable costs and attorney's fees after considering their financial resources and the reasonableness of their positions on appeal. A.R.S. § 25-324(A). The family court found the parents have similar financial resources. The record shows Father earns nearly three times as much as Mother, however.

**¶25**          In addition, Father has taken unreasonable positions on appeal. He failed to support and develop several of his arguments as required by ARCAP 13. And he provided a disingenuous account of his role in unreasonably delaying the proceedings in the family court. Accordingly, we deny his request for fees on appeal. Mother is representing herself on appeal, so we therefore award Mother her taxable costs on appeal in an amount to be determined pending her compliance with ARCAP 21.

### CONCLUSION

**¶26**          For the reasons above, we affirm the family court's rulings.



AMY M. WOOD • Clerk of the Court
FILED:
JT

---

joint decision-making. A.R.S. § 25-411(A). As more than six months have elapsed since the family court finalized its orders awarding joint decision-making, no obstacle remains to Father seeking modification based on Mother's alleged noncompliance.