NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MONIQUE SALCIDO, *Petitioner/Appellant*,

*v.*

RYAN HAMILTON, *Respondent/Appellee*.

No. 1 CA-CV 23-0584 FC
FILED 06-11-2024

Appeal from the Superior Court in Maricopa County
No. FC2021-001455
The Honorable Max Covil, Judge

**AFFIRMED AS MODIFIED; REMANDED IN PART**

COUNSEL

Monique Salcido, Tempe
*Petitioner/Appellant*

Best Law Firm, Scottsdale
By Alexus C. Mamood
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Maria Elena Cruz and Judge Cynthia J. Bailey joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　　Monique Salcido ("Mother") argues the superior court erred by entering a consent judgment modifying legal decision-making authority, parenting time, and child support orders. We affirm the ruling as modified to clarify that the parties agreed under Arizona Rule of Family Law Procedure ("Rule") 69 but did not agree to a consent judgment. As a result, the Rule 69 agreement controls if it is different from the consent judgment.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　In 2018, the parties divorced in Hawaii. Ryan Hamilton ("Father") lived in Texas, and the decree ordered Mother to move to Arizona. The parties have one child, who turned eighteen in November 2023.

**¶3**　　　　In 2021, Father registered the Hawaiian decree in Arizona. The decree awarded Mother sole physical custody and joint legal custody with certain final decision-making authority. Father had parenting time over some holidays and part of summer vacation, and the court ordered him to pay Mother $840 monthly in child support.

**¶4**　　　　When Father registered the decree, he also petitioned to modify it and moved for emergency temporary orders for sole legal decision-making authority and designation as the primary residential parent. The superior court denied the motion for emergency temporary orders. When Father returned the child to Arizona at the end of the summer in 2021, he again filed a motion for emergency temporary orders. The court denied the emergency motion. The court also ordered (1) Father to return the child to Mother, (2) the parties to get counseling for the child, and (3) the court-appointed advisor to re-interview the child and provide a report.

**¶5**　　　　Father filed a third motion for temporary orders without notice in February 2022. The superior court denied the motion on an emergency basis but scheduled an evidentiary hearing. After the hearing, the court temporarily modified the decree, naming Father the primary

residential parent and awarding Mother the same parenting time Father had in the original decree. The court did not change the joint legal decision-making authority order.

**¶6** Father moved to schedule a trial on his modification petition and for a mental or behavioral health examination of Mother. He also moved to amend the temporary orders, seeking sole legal decision-making authority and no parenting time for Mother until she completed a mental or behavioral health evaluation. Mother's response requested that Father undergo a similar evaluation. It also alleged that Father committed domestic violence in the past and recently committed custodial interference by denying Mother the right to attend the child's choir concert. Mother asked to disqualify Father's attorney, arguing the attorney was complicit in the custodial interference based on the attorney's letter stating that Father would call the police if Mother attended the concert.

**¶7** The superior court granted Father's motion for Mother to undergo a behavioral health evaluation but denied Mother's motion. The court scheduled a hearing on Father's petition to modify legal decision-making, parenting time, and child support.

**¶8** Before the hearing, the parties discussed a settlement. On March 29, 2023, Father's attorney sent Mother a letter incorporating previous discussions ("the March 2023 Letter"). Father proposed six paragraphs of agreements about child support, attorney's fees, parenting time, school functions, medical appointments, school records, and updates. The attorney's fees agreement stated:

> (2) Attorney's Fees: Mr. Hamilton agrees that each party shall pay their own attorney's fees and costs. Should this matter proceed to trial, Mr. Hamilton will be seeking reimbursement for his attorney's fees and costs.

The March 2023 Letter instructed Mother to sign the attached signature page if she accepted the terms.

**¶9** Mother responded by changing paragraph six to state that Father would provide monthly updates via a certified letter or email. She signed the March 2023 Letter on March 31, 2023. That same day, Mother emailed Father's attorney stating:

> I am in agreement with the settlement if Father will communicate monthly either through certified USPS or email. These are documented forms of communication. Our Family

Wizard proved to be unsuccessful if not utilized as intended. I have no intention on [sic] responding to Father per the updates. Legally, I would like information regarding my child, such as her taking her SAT, getting a drivers [sic] license and pictures of her programs etc.

Father's attorney replied that Father agreed "to one email a month." Father filed a notice of settlement with the court five days later. He attached the parties' correspondence, *supra* ¶¶ 8-9, and stated he would submit a "Rule 69 Agreement" for the parties' and the court's signatures.

¶10        When Mother received Father's draft of the settlement agreement, she asked to change the date from March 31 to April 1, 2023, and to add a stipulation stating that she had not been given the court-ordered parenting time or communication. Mother also stated that the draft did not accurately reflect the settlement agreement because it did not include certain paragraphs from the March 2023 Letter.

¶11        Father's attorney pointed out that the draft did include those paragraphs and agreed to add the language Mother requested but commented that Mother did not complete the court-ordered psychological evaluation required for parenting time. Mother responded that the proposed documents included several items not part of the settlement agreement and asked to delete the "assumptions on Child Support." Father's attorney explained that the added language was required and would remain, but she instructed Mother to write out any revision requests and return the document. Father's attorney informed Mother that Father would request attorney's fees if he had to lodge the decree without Mother's signature. This is the last communication about the agreement in the record.

¶12        Mother did not respond and petitioned to enforce the temporary parenting time orders, alleging that Father committed custodial interference. Mother acknowledged the settlement discussions but alleged that Father's attorney had changed unspecified settlement agreement terms in the final document. Father moved to dismiss the enforcement petition because it made the same arguments as Mother's previously denied motions. Father's attorney specifically denied that the proposed "consent judgment" sent to Mother materially differed from the settlement agreement letter Mother signed. Mother replied that there was no enforceable settlement agreement because she disagreed with the terms. The court denied Mother's petition, finding no good cause.

**¶13** Father lodged a consent judgment with only his signature. He included copies of the correspondence detailed above. He asked the court to enter the consent judgment or the parties' Rule 69 agreement as a formal decree by adding the necessary language under Rule 78(c). The court scheduled a status conference to discuss the matter. Two days before the status conference, Mother requested a continuance. The record does not show that the status conference took place. The superior court signed the consent judgment on June 23, 2023. The clerk did not file the judgment until August 16, 2023, for reasons unclear in the record.[1] Mother immediately appealed.

**¶14** A week later, Mother moved for reconsideration of the consent judgment, again arguing that Father committed domestic violence and custodial interference. She also alleged that Father had waived any child support, which contradicts the consent judgment's language requiring Mother to pay Father's attorney's fees if she does not repay the child support. The superior court did not rule on the motion for reconsideration. We presume this is because it lacked jurisdiction to consider the motion after Mother filed her notice of appeal. *See Moreno v. Beltran*, 250 Ariz. 379, 382, ¶ 14 (App. 2020).

**¶15** Father later petitioned to enforce the consent judgment provision that required Mother to reimburse him for any child support she received between April 1, 2023, and the date the withholding order terminated. The superior court dismissed the petition based on Mother's motion.

**¶16** We have jurisdiction over Mother's appeal from the consent judgment under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶17** Mother challenges the consent judgment on several grounds. Ordinarily, a consent judgment is not appealable. *Cofield v. Sanders*, 9 Ariz. App. 240, 242 (1969). That said, we can consider Mother's appeal because

---

[1] Father stated that he mistakenly inserted his signature page instead of the correct first page of the proposed consent judgment. He asserted that the conformed copy filed by the superior court on August 16, 2023, contained the correct first page and that this clerical error caused the delay between the court's signature (on June 23, 2023) and the filing date (August 16, 2023).

she alleges that she did not consent to the judgment and that it resulted from fraud or mistake. *Id.* The validity of a separation agreement is a mixed question of fact and law reviewed *de novo. Ertl v. Ertl*, 252 Ariz. 308, 312, ¶ 11 (App. 2021). Mother bears the burden of showing the agreement was invalid. *See id.* at 314, ¶ 17; Ariz. R. Fam. Law P. 69(c).[2]

**A.   We Do Not Address the Moot Arguments About Legal Decision-Making Authority and Parenting Time.**

**¶18**        Many of Mother's arguments relate to the legal decision-making and parenting time orders in the consent judgment. These arguments are moot because the child is now an adult. *See* A.R.S. § 25-312(E) (A decree must resolve legal decision-making, parenting time, and child support orders for any child common to the parties.); *id.* § 1-215(6) (defining a child as a person under eighteen). Our resolution of these issues will not affect the parties. *See Cardoso v. Soldo*, 230 Ariz. 614, 617, ¶ 5 (App. 2012) (A moot appeal is one where the appellate court's action will not affect the parties.). We decline to consider these arguments because no exceptions to the mootness doctrine apply. *See id.* at 617, ¶¶ 5-7 (recognizing exceptions to mootness when there is "an issue of great public importance or one capable of repetition yet evading review").

**B.   Mother's Signature on the March 2023 Letter and Father's Acceptance of Her Revisions Created a Binding Rule 69 Agreement Regarding the Agreed Terms. Any Materially Different Terms Are Unenforceable.**

**¶19**        An enforceable agreement requires "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 246 Ariz. 126, 129, ¶ 10 (App. 2019). Mutual assent to all material terms is required, but the parties "need not have worked out all the basic terms of the agreement." *Ertl*, 252 Ariz. at 312, ¶ 12. Under Rule 69, agreements between the parties are valid if they

---

[2]        Father asks this court to dismiss the appeal as a sanction under Arizona Rule of Civil Appellate Procedure ("ARCAP") 25 because the opening brief does not comply with ARCAP 13. Mother's brief fails to include correct record citations for many issues and an appropriate statement of this court's jurisdiction. *See* ARCAP 13(a)(4), (5), (d). But we decline to dismiss the appeal because we generally prefer to decide cases on the merits. *See Clemens v. Clark*, 101 Ariz. 413, 414 (1966).

are "in writing and signed by the parties personally or by counsel on a party's behalf." Ariz. R. Fam. Law P. 69(a)(1).

¶20 The March 2023 Letter and Father's attorney's acceptance of Mother's proposed changes constitute a binding agreement to the document's terms. The March 2023 Letter, Mother's proposed modifications, and Father's attorney's acceptance of the modifications provide the necessary elements for an enforceable agreement. *See Buckholtz*, 246 Ariz. at 129, ¶ 10. Mother's "subsequent decision not to sign the memorialization of the parties' agreement does not negate her prior act of agreeing . . . to all the terms in the [signed March 2023 Letter]." *See Ertl*, 252 Ariz. at 314, ¶ 17.

¶21 Although Father lodged a "consent judgment" for the superior court's signature, he stated that the attached exhibits showed a binding Rule 69 agreement. He asked the court to enter the consent judgment or the parties' Rule 69 agreement as a final court order. The court did not issue a corresponding minute entry when it signed the proposed consent judgment. It is unclear whether the court approved the parties' agreement under Rule 69, which would have been correct, or entered a consent judgment in error.

¶22 Consent judgments are governed by Rule 45, which states that both parties must sign the consent judgment before a notarial officer or in the clerk's presence. Ariz. R. Fam. Law P. 45(b)(4). Here, only Father signed. Thus, the court could not have entered a consent judgment.

¶23 In any case, the parties had a binding Rule 69 agreement without Mother's signature on the proposed consent judgment. *See Ertl*, 252 Ariz. at 314, ¶ 17. Thus, the superior court could have approved the agreement under Rule 69 as Father alternatively requested. *See* Ariz. R. Fam. Law P. 69(b). That the superior court entered a document titled a consent judgment does not negate the parties' binding Rule 69 agreement.

¶24 We agree with Mother that the consent judgment entered by the superior court conflicts with the Rule 69 agreement on one material point. Mother agreed to and signed the March 2023 Letter providing that Father could *seek* attorneys' fees if the matter goes to trial. But the consent

judgment states that Mother *shall pay* Father's attorney's fees and costs if Father goes to court on the child support issue.[3] This is a material difference.

**¶25** The consent judgment's mandatory fee provision is unenforceable because the parties' binding Rule 69 agreement controls. Under the agreement, Father could only *request* fees; it does not *require* Mother to pay Father's fees. Thus, the parties are only bound by the terms agreed to in the March 2023 agreement for any future enforcement action.[4]

**¶26** Finally, we are compelled to comment on the conduct of Father's attorney. As discussed above, she lodged a consent judgment with terms that varied materially from the parties' Rule 69 agreement. She later signed a pleading stating that the consent judgment did not differ significantly from the Rule 69 agreement. Counsel has an ethical obligation of candor to the tribunal and to avoid factual misrepresentation. *See* Ariz. R. Sup. Ct. 42, ER 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"); ER

---

[3] Mother agreed to the following attorney's fees provision in the March 2023 Letter:

> [E]ach party shall pay their own attorneys' fees and costs. Should this matter proceed to trial, [Husband] *will be seeking* reimbursement for his attorney's fees and costs. (Emphasis added.)

Yet the signed judgment states:

> Each party shall pay his or her own attorney's fees and costs. However, in the event Mother fails to reimburse Father for the child support paid to Mother from April 1, 2023 through such time as the Income Withholding Order is effectively terminated, and Father must seek judicial interference to retrieve the same, *Mother shall be responsible for Father's attorney's fees and costs associated with said judicial interference.* (Emphasis added.)

[4] On appeal, Father states he decided not to pursue the child support overpayment. Still, this statement does not render the issue moot because Father could decide otherwise in the future.

8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]").

**¶27** Based on the record, Father's attorney appears to have misrepresented the terms of the parties' Rule 69 agreement by lodging the consent judgment containing materially different terms. She provided no basis to support the additional terms favorable to her client and disadvantageous to Mother, a self-represented litigant. *See State v. Cornell*, 179 Ariz. 314, 331 (1994) ("[T]he right to self-representation does not signal playtime" for opposing counsel.). "In a legal system which relies on the integrity of lawyers to provide honest, forthright adversarial representation as a means to achieving truth and justice, we demand that members of the bar provide nothing less." *In re Wetzel*, 143 Ariz. 35, 45 (1984). As a result, we must refer this case to the State Bar of Arizona to determine whether Father's attorney has committed an ethical violation. *See* Ariz. R. Sup. Ct. 81, Canon 2, Rule 2.15(B); *see also J.W. v. Dep't of Child Safety*, 252 Ariz. 184, 190, ¶ 19, n.13 (App. 2021).

**¶28** At our discretion, we award Mother her costs and any certified legal document preparer's fees as a sanction under ARCAP 25 based on Father's attorney's misrepresentation of the terms in the Rule 69 agreement.

## CONCLUSION

**¶29** We affirm the judgment as modified to reflect that the Rule 69 agreement governs. Father may request, but is not necessarily entitled to, an award of attorney's fees related to the child support repayment provision. The judgment is redesignated as a Rule 69 agreement because it does not satisfy the requirements of a consent judgment. Finally, as an ARCAP 25 sanction, Father or Father's attorney must pay Mother's reasonable legal document preparer's fees and taxable costs contingent upon Mother's compliance with ARCAP 21. If Mother complies with ARCAP 21, we will determine the fee amount and remand for the superior court to hold a culprit hearing to determine whether Father or Father's attorney must pay the sanction. *See Lund v. Donahoe*, 227 Ariz. 572, 581, ¶ 34 (App. 2011) (A culprit hearing is "aimed at protecting a party from dispositive sanctions when the fault lies only with counsel.").

